UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY A. TAYLOR,

                Plaintiff,

                                  CIVIL CASE NO. 05-40014

v.

UNUM PROVIDENT CORP.,           HONORABLE PAUL V. GADOLA
                                                U.S. DISTRICT COURT
                Defendant.
_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Before this Court are Defendant's motion for summary judgment and Defendant's motion in limine. For the reasons below, the Court grants Defendant's motion for summary judgment and denies Defendant's motion in limine as moot.

**I.    Background**

Plaintiff Jerry Taylor is a self-employed hand surgeon residing in Oakland County, Michigan. In September 1989, a disability insurance policy was issued by Provident Life and Accident Insurance Company ("Provident") to Plaintiff. Defendant Unum Provident Corporation is the holding company of Provident, while Provident is the actual insuring entity. It is undisputed that the insurance premiums were paid on the Provident policy and that the policy was in force from September 1, 1989, through at least July 12, 2004.

Plaintiff first became disabled in January 1998 due to an arthritic condition in his neck that required surgery. Plaintiff then filed a claim for disability benefits pursuant to his insurance policy with Defendant. Defendant asserts that Plaintiff received benefits for the neck disability throughout the entire period from January 1, 1998, through July 12, 2004.

While still suffering from the neck disability, Plaintiff underwent knee replacement surgery in 2000. In November 2001 and again in October 2003, Plaintiff underwent surgery to correct back pain. Defendant asserts that Plaintiff received higher benefits during this time due to the subsequent knee and back disabilities that were in addition to the original neck disability.

The dispute in this case centers on benefits for the subsequent back disability. Plaintiff contends that he is entitled to additional benefits for the back disability, because this subsequent disability is a "successive" disability, as contemplated by the terms of the insurance policy. Defendant contends that since there was only one continuous period of disability from 1998 to 2004, Plaintiff has been paid in full up to the maximum benefit amount and is not entitled to any more benefits.

On December 12, 2004, Plaintiff began this cause of action against Defendant in the Circuit Court for the County of Oakland, Michigan, alleging a breach of contract claim and a violation of the Michigan Consumer Protection Act ("MPCA"), M.C.L. § 445.901 *et seq*. On January 19, 2005, Defendant removed the case to this Court on grounds of diversity of citizenship.

After discovery was completed, the parties attended a final pretrial conference on March 1, 2006. At the conference, it became evident that there were dispositive legal issues that needed to be addressed before trial. The Court ordered Defendant to file a dispositive motion addressing: (1) whether Plaintiff's breach of contract claim could be maintained under the terms of the contract; (2) whether Plaintiff could maintain an action under the MCPA; and (3) whether the argument and evidence pertaining to the "Targeted Multistate Disability Income Market Conduct Examination" was admissible. Order, docket entry 22 (Mar. 1, 2006). Pursuant to the Court's order, Defendant filed the two motions now before the Court.

**II.     Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**III.   Analysis**

    **A.   Plaintiff's Breach of Contract Claim**

The terms of Plaintiff's insurance policy with Defendant provides for benefits during periods of residual and total disability. The parties do not dispute that Plaintiff has been either residually disabled or totally disabled or both since January 1, 1998 through at least July 12, 2004, and that

Plaintiff received benefits throughout this entire period.

In its motion, Defendant argues that summary judgment in its favor is appropriate because it has paid Plaintiff all the disability benefits to which he is entitled. Defendant argues that under the clear and express terms of the insurance policy, if Plaintiff has a disability period starting before his 61st birthday, he is entitled to benefits up to his 65th birthday, and that Defendant has paid all these benefits.

Plaintiff argues in response that there was not a single period of disability, but instead a successive period of disability that began in 2003 due to a different underlying cause. Since there was a successive disability period, Plaintiff argues that he is still owed benefits under the insurance policy. The issue of whether there was a successive period of disability centers on the parties' differing interpretations of the language of the insurance policy.

In this federal diversity case, Michigan law governs the interpretation of the insurance policy. *See NILAC Int'l Mktg. Group v. Ameritech Servs.*, 362 F.3d 354, 358 (6th Cir. 2004). Under Michigan law, "the rules for construction of an insurance contract are the same as for any other written contract." *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 942 (6th Cir. 1993). "Policy language in an insurance contract is to be given its ordinary meaning unless it is apparent from a reading of the whole instrument that a different or special meaning was intended. *Id.* "[U]nambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005) (emphasis in original). Accordingly, "[a]bsent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 494 (Mich. 2001).

5

"Under Michigan law, the question of whether contractual terms are ambiguous is a question of law." *NILAC Int'l Mktg. Group*, 362 F.3d at 358. "An insurance contract is ambiguous when its provisions are capable of conflicting interpretations. . . . Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear." *Farm Bureau Mut. Ins. Co. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999).

The relevant contractual language defines a period of disability as being "a period of disability starting while this policy is in force." Def. Mot. for Sum. Judg., docket entry 23, Exh. 1, p. 4 (March 30, 2006). The insurance policy goes on to state:

> Successive periods will be deemed to be the same period unless the later period:
> 1. is due to a different or unrelated cause, or
> 2. starts more than twelve months after the end of the previous period . . .
> in which event, the later period will be a new or separate period of disability. A new Elimination Period must then be met. And, a new Maximum Benefit Period will apply.

*Id.* What constitutes a "successive" period of disability is not defined in the policy. Based on this contractual language, Plaintiff argues that if a disability is due to a different cause, then it should be considered a "successive" disability. Plaintiff subsequently argues that his more recent back disability has a different cause than his original neck disability, and accordingly, the maximum benefit period changed and Plaintiff is entitled to additional benefits.

The Court does not find Plaintiff's contractual interpretation to be persuasive. The passage on which Plaintiff primarily relies does not define successive periods. Instead, the "successive period" passage explains that when there are successive periods, the second period will be considered the same period as the first period as long as either condition does not apply. The natural way of reading this "successive period" passage is not that a successive period can begin during a

previous period if there is a different cause, as Plaintiff suggests. On the contrary, the ordinary meaning of the passage is the interpretation proposed by Defendant: that "successive periods" means two separate periods of disability following one another in succession.

In further support of Defendant's interpretation of the insurance policy is the section that provides: "In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability that provides the greater benefit." *Id.* at p. 9. A plain reading of this text in conjunction with the rest of the insurance policy indicates that though an individual may suffer from several disabilities at one time, there is only one period of disability, with Defendant agreeing to pay benefits for the disability that provides the greater benefit.

Plaintiff further argues that the "Elimination Period" language on pages 4 and 5 of the insurance policy makes no sense under Defendant's interpretation of the contract. Plaintiff argues that the "Elimination Period" is only necessary if a new period of disability can arise during an existing period of disability. The Court disagrees with Plaintiff, and finds that when considering the whole contract, the "Elimination Period" text is still consistent and applicable under Defendant's interpretation. In Plaintiff's particular case, since Plaintiff was continuously disabled during one period of disability, Plaintiff was never charged with any new Elimination Periods after he began receiving benefits in 1998.

In conclusion, when the contract is read as a whole and its words are given their plain and ordinary meaning, there is but one reasonable interpretation: that Plaintiff did not have successive periods of disability due to different disability causes, but rather, that Plaintiff experienced one single and uninterrupted period of disability from January 1, 1998 through July 12, 2004 because

a successive disability period cannot begin during a previous disability period. It is undisputed that Plaintiff continuously received benefits during this one uninterrupted disability period. The fact that Plaintiff's benefit amounts changed over time due to Plaintiff's suffering from other disabilities does not change the fact that Plaintiff only had one period of disability and not several successive periods.

Thus, even viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact, and Defendant is entitled to summary judgment as a matter of law. Defendant did not breach its contract with Plaintiff because it provided Plaintiff all the benefits to which Plaintiff was entitled.

**C.     Plaintiff's claim under the Michigan Consumer Protection Act**

Defendant's motion for summary judgment also argues that Plaintiff's MPCA claim should be dismissed as a matter of law. Defendant argues that, under Michigan law, a plaintiff cannot maintain a claim for denial of insurance benefits under the MPCA. Plaintiff argues, on the contrary, that the MPCA does permit a claim in this case. In support, Plaintiff appeals to the proposition that the MPCA should be construed liberally so as to protect consumers in the marketplace. *See Dix v. American Bankers Life Assurance Co.*, 415 N.W.2d 206, 209 (Mich. 1987). Plaintiff fails to provide any direct case law support stating that the MPCA creates a cause of action against insurance providers.

Defendant, on the other hand, submits case law which tends to indicate that the MPCA does not provide a cause of action against insurance companies. *See McLiechey v. Bristol W. Ins. Co.*, 474 F.3d 897, 903 (6th Cir. 2007) ("While most businesses are subject to the Michigan Consumer Protection Act, insurance companies are not to the extent that various provisions of the Michigan Insurance Code, obviously including both the Credit Insurance Act and Chapter 21, regulate their

conduct."); *Rodgers v. North American Ins. Co.*, 2005 WL 1683548 (Mich. Ct. App. July 19, 2005) (affirming the dismissal of a MPCA claim against an insurance company). Defendant also observes that the Michigan legislature amended the MPCA in the year 2000 by closing off causes of action against insurance companies for unfair or deceptive methods prohibited by chapter 20 of the insurance code. *See* M.C.L. § 445.904(3). Consequently, this Court declines to find that Plaintiff can bring a claim under the MPCA against Defendant. Summary judgment in favor of Defendant on Plaintiff's MPCA claim is thus appropriate.

**IV.     Conclusion**

For the reasons stated above, the Court finds that summary judgment in favor of Defendant on both Plaintiff's breach of contract claim and MPCA claim is appropriate. Defendant has also filed a motion in limine requesting the exclusion of any argument or evidence relating to the "Targeted Multistate Disability Income Market Conduct Examination." Because the Court grants summary judgment in favor of Defendant, this case is dismissed and the motion in limine is moot.

**V.     Conclusion**

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 23] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion in limine [docket entry 24] is **DENIED AS MOOT**.

**SO ORDERED.**

Dated:  March 30, 2007                                s/Paul V. Gadola
                                                                    HONORABLE PAUL V. GADOLA
                                                                    UNITED STATES DISTRICT JUDGE

9

Certificate of Service

I hereby certify that on   March 30, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
              K. Scott Hamilton; Edward M. Miller                        , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                      .

                                                  s/Ruth A. Brissaud
                                                  Ruth A. Brissaud, Case Manager
                                                  (810) 341-7845